IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**SHELBY DEAN SKAGGS,**

      **Plaintiff,**

v.                                             Case No. 3:13-cv-3293

**WESTERN REGIONAL JAIL; WEST
VIRGINIA REGIONAL JAIL AUTHORITY;
WEST VIRGINIA DEPARTMENT OF
CORRECTIONS; and MICHAEL CLARK,
Administrator,**

      **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATION**

On February 22, 2013, Plaintiff Shelby Dean Skaggs ("Skaggs"), proceeding *pro se* and then incarcerated at the Western Regional Jail in Barboursville, West Virginia, filed a complaint under 42 U.S.C. § 1983, alleging that the defendants had been deliberately indifferent to his medical needs and requesting prospective relief, as well as money damages for pain and suffering. (ECF No. 2). Since the filing of the complaint, Skaggs has been transferred to the Saint Mary's Correctional Center in Pleasants County, West Virginia. This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for total pretrial management and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4).

1

Pending before the Court is the Motion to Dismiss of Defendants, the Western Regional Jail (the "Jail"), the West Virginia Regional Jail & Correctional Facility Authority ("the Authority"), and the West Virginia Department of Corrections ("DOC"). (ECF No. 14). These defendants seek an order of dismissal on the basis that they are arms of the State and therefore not subject to suit under the Eleventh Amendment to the United States Constitution. In addition, Defendant Michael Clark has filed a Motion to Dismiss, arguing that (1) claims against him in his official capacity are barred by the Eleventh Amendment; (2) claims against him in his personal capacity are not sufficiently plausible to withstand dismissal; and (3) the prospective relief sought by Plaintiff—to be transferred to a facility supervised by the DOC—is not available to him. (ECF No. 16). Plaintiff has filed a response to the motions to dismiss. (ECF No. 56). Having thoroughly considered the motions, the undersigned **FINDS** that the Jail, the Authority, and the DOC are entitled to the relief they seek. The undersigned further **FINDS** that Defendant Clark is entitled to a dismissal of the claims against him in his official capacity, but the motion to dismiss claims against him in his personal capacity is premature and should be denied. Therefore, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** the motion of the Jail, the Authority, and the DOC; **GRANT** a dismissal of any claims asserted against Defendant Clark in his official capacity; and **DENY** the remainder of Clark's motion to dismiss as premature.

I. **Relevant Facts**

Skaggs complains that on the weekend of April 14, 2012, he was stopped in the hallway of the Western Regional Jail by Michael Clark, who was then the administrator of the Jail. Clark asked Skaggs why he had a brace on his right leg and special shoes on both feet. (ECF No. 56 at 2). Skaggs explained that he was involved in a mining accident

in 1983 and wore the devices to compensate for a difference in his leg length. Without explanation, Clark ordered that Skaggs's left shoe, which contained an elevation insert, be removed and confiscated. (*Id*). Thereafter, Skaggs was forced to use the right shoe and brace without the supporting left shoe. His right shoe and brace eventually broke from the added strain and were removed by the Jail's Medical Unit. Once Skaggs lost his brace and shoes, he was forced to use a wheelchair. Despite filing numerous sick call requests and grievance forms seeking the return of his left shoe and the repair or replacement of his right shoe and brace, Skaggs remains wheelchair bound. (*Id.*). For relief, he requests transfer to a DOC facility, a new brace and shoes, and $3,000,000 in compensatory damages for pain and suffering. (ECF No. 2 at 5).

## II. Standard of Review

The defendants have filed motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the dispute, *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982), while a motion under Rule 12(b)(6) tests the sufficiency of the complaint to state a claim. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face").

A Rule 12(b)(1) motion can be presented in two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true. *Adams,* 697 F.2d at 1219. In that case, the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside of the pleadings without converting the proceeding to one for summary judgment. *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams,* 697 F.2d at 1219). Second, the

movant may contend, as Defendants have done here, that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams,* 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* The burden of proving that the court has subject matter jurisdiction rests with the plaintiff. *Johnson v. North Carolina*, 905 F.Supp.2d 712, 719 (W.D.N.C. 2012). However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

Rule 12(b)(6) permits the district court to dismiss a complaint that fails to state a claim upon which relief may be granted. A complaint fails to state a compensable claim when, viewing the well-pleaded factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp,* 550 U.S. at 570; *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679.

Courts are required to liberally construe *pro se* complaints, such as the one filed in this action. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I.*

4

*Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). A Rule 12(b)(6) motion should be granted only "'where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.,* 707 F.3d 1114, 1122 (9th Cir.2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1102 (9th Cir.2008)).

"The Fourth Circuit has not resolved whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or 12(b)(6)." *Haley v. Virginia Dept. of Health*, Case No. 4:12-cv-0016, 2012 WL 5494306, at *2 n.2 (W.D.Va. Nov. 13, 2012) (citing *Andrews v. Daw,* 201 F.3d 521, 525, n.2 (4th Cir. 2000)). "The recent trend, however, appears to treat Eleventh Amendment immunity motions under Rule 12(b)(1)." *Id.; See also Johnson,* 2012 WL 5024039, at *4 (W.D.N.C. Oct. 17, 2012) (collecting cases). Whether Eleventh Amendment immunity should be evaluated under Rule 12(b)(1) or 12(b)(6) is a distinction without a difference in this case given that the Court has relied solely on the pleadings in resolving that issue, having construed them in the light most favorable to Skaggs. *Beckham v. Nat'l. R.R. Passenger Corp.,* 569 F.Supp.2d 542, 547 (D.Md. 2008).

### III. <u>Discussion</u>

#### A. *The Jail, the Authority, and the DOC*

The Eleventh Amendment to the United States Constitution provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to

5

any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the Supreme Court of the United States has construed the Amendment to "establish that 'an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 304 (2009) (quoting *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984)). The immunity created by the Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint,* Case No. 0:10-50- HMH-PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will v. Mich. Dept. of State Police,* 491 U.S. 58, 78, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *See also Regents of the Univ. of California v. Doe,* 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities").

As a threshold issue, the undersigned must determine whether the Jail, the Authority, and the DOC are arms of the State protected by its Eleventh Amendment immunity. Clearly, the DOC is a state agency created by statute and entitled to immunity. W.Va. Code §25-1-1 *et seq.*; *See Fridley v. WV Dept. of Corrections,* Case No. 3:08–CV–111, 2009 WL 1097529 (N.D.W.Va., Apr. 22, 2009). Likewise, in *Roach v. Burch,* the United States District Court for the Northern District of West Virginia conclusively resolved this issue as it pertains to the Authority, finding that the Authority was, "in effect, the State" and thus enjoyed "the Constitutional immunity of the Eleventh

6

Amendment." *Roach*, 825 F.Supp. 116, 118 (N.D.W.Va. 1993). Similarly, the Jail, which is a subdivision of the Authority and part of the West Virginia prison system, is also entitled to immunity from suit in federal court. *See* West Virginia Code § 30-20-1a, et seq*; Meadows v. Huttonsville Correctional Center,* 793 F.Supp. 684, 686 (N.D.W.Va. 1992); *see also Mora v. Westville Correctional Facility,* Case No. 3:07-cv-259, 2008 WL 2906761, at \*2 (N.D. Ind. July 24, 2008).

Three narrow exceptions to Eleventh Amendment immunity exist. *Lee-Thomas v. Prince George's County Public Schools,* 666 F.3d 244, 248-49 (4th Cir. 2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.,* 535 U.S. 613, 618, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002). Such a waiver must be express; an "'unequivocal' statement of the state's intention to subject itself to suit in *federal* court." *See Regueno v. Erwin*, Case No. 2:13-cv-815, 2013 WL 1837881, at \*3 (S.D.W.Va. May 01, 2013) (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways,* 845 F.2d 468, 470–71 (4th Cir. 1988)). Defendants argue that West Virginia has not waived its Eleventh Amendment immunity, a position that is consistent with legal precedent. *Meadows,* 793 F.Supp. at 686; *see also Fridley,* 2009 WL 1097529, at \*2. Consequently, this exception does not apply.

Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (quoting *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)). The Supreme Court of the United States has definitively answered the question of whether Congress intended to abrogate a State's immunity against suits brought under 42 U.S.C. § 1983. In *Will v. Michigan*

7

*Department of State Police,* the Supreme Court analyzed the statute and concluded that Congress did not have the States in mind as potential defendants when it imposed liability on "persons" under § 1983. *Will,* 491 U.S. at 65. Noting that ordinary rules of statutory construction required Congress to make any alteration of the "usual constitutional balance between the States and the Federal Government ... unmistakably clear in the language of the statute," the Supreme Court observed that had Congress intended to include States as "persons," it would have explicitly done so. *Id.* at 65 (citing *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985)). Reaffirming this decision two years later, the Supreme Court explained that "interpreting the words '[e]very person' to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer v. Melo,* 502 U.S. 21, 26, 112 S.Ct. 358, 116 L.Ed.2d 601 (1991) (quoting *Will,* 491 U.S. at 65). Therefore, the law is well-settled that Congress has not abrogated Eleventh Amendment immunity in the context of a § 1983 action. *See Quern v. Jordan,* 440 U.S. 332, 340, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins,* 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004) (citing *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, *and* who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II,* 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young,*

8

*209* U.S. at 155-156). The state officer being sued must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy,* 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (internal citations omitted). Here, Skaggs has sued the Jail, the Authority, and the DOC, rather than an official authorized with carrying out an alleged unconstitutional policy or procedure. As a result, Skaggs's complaint against the Jail, the Authority, and the DOC cannot proceed as filed. *Lee-Thomas,* 666 F.3d at 249 (the lawsuit must name as a defendant a state official, not a state agency); *see also Thomas v. Nakatani,* 309 F.3d 1203, 1208 (9th Cir. 2002) (*"Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction").

Allowing Skaggs to amend his complaint and substitute an appropriate official in place of the Jail, the Authority, and the DOC, however, would not effectively correct the deficiencies of his claims against them. First, these defendants are immune from liability for money damages regardless of whether they are sued by agency name, or in the name of a State official. Second, in light of Skaggs's transfer to Saint Mary's Correctional Center, a DOC facility, his claim for prospective relief has been resolved in his favor and thus is moot. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively

9

dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed,* 719 F.2d. 689, 693-94 (4th Cir. 1983). "The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 68, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (quoting *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980)). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse,* 569 F.3d 182, 186 (4th Cir. 2009). "The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007). Moreover, "[a]ny declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted." *Id.*

Nevertheless, a prisoner's claim should not be dismissed as moot if there is sufficient evidence to conclude that the action is "capable of repetition, yet evading review." *Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). Under this exception, a claim that would otherwise be moot may be subject to judicial review if the facts of the case lead to a reasonable expectation that the same

complaining party would be subjected to the same action again. *See Federal Election Com'n v. Wis. Right to Life*, 551 U.S. 449, 462, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007) ("capable of repetition" exception requires demonstrated probability that the same controversy will recur involving the same plaintiff). Mere conjecture that the prisoner may return to the correctional facility and again face the alleged wrong is not sufficient to meet the mootness exception. *Higgason v. Farley,* 83 F.3d 807, 811 (7th Cir. 1996).

In this case, Skaggs is no longer in the custody of the Jail or the Authority and is now housed at a DOC facility. No evidence exists upon which to conclude with "reasonable probability" that Skaggs will be returned to the Jail, or any institution operated by the Authority. Consequently, the undersigned **FINDS** that (1) the Jail, the Authority, and the DOC are entitled to Eleventh Amendment immunity from suit; (2) Skaggs's transfer from the Jail to a DOC facility renders his claims for prospective relief moot and (3) the current circumstances do not suggest that Skaggs's claim is "capable of repetition, but evading review."

### B. Michael Clark

A State official may be liable for money damages under § 1983 for a constitutional violation committed by the official in his or her personal capacity. Title 42 U.S.C. § 1983 provides:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Scheuer v. Rhodes,* 416 U.S. 232, 243 (1974) (quoting *Monroe v. Pape,* 365 U.S. 167, 171–72 (1961)). In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person (the defendant) deprived him or her of a federally protected civil right, privilege or immunity and (2) that the defendant did so under color of state law. *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50–52 (1999). If either of these elements is missing, the complaint fails to state a claim for relief under 42 U.S.C. § 1983.

The United States Supreme Court addressed the issue of whether a State official is a person for purposes of § 1983 in *Will v. Michigan Department of State Police,* holding "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. 58, 71 (1989). As elucidated by the Supreme Court, "[o]bviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71.

The Court later clarified its holding, making a distinction between officials acting in their official capacities and officials acting in their personal capacities under color of state law. *Hafer v. Melo*, 502 U.S. 21, 25–31 (1991). The former are immune from prosecution for money damages under § 1983, while the latter are not. The Court explained that because the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, the target of such a claim is the entity's "policy or custom." *Hafer,* 502 U.S. at 25. "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken

12

under color of state law." *Id.* Therefore, if the claim against Defendant Clark is an "official-capacity" claim, he will enjoy the same immunity from money damages as the State of West Virginia. If the claim is a "personal-capacity" claim, Clark will not be afforded the same protection, although he "may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Id.*

The determination of whether a defendant has been named in his official or personal capacity is generally made by examining the face of the complaint. *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.,* 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other grounds by* 524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998). Nevertheless, "a plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983 ... when a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows,* 66 F.3d 56, 60-61 (4th Cir. 1995). In *Foreman v. Griffith*, the Fourth Circuit discussed the significance of these factors in *Biggs*:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* court stated that the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. With respect to the nature of the relief sought, the *Biggs* court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. Finally, with respect to the course of proceedings, the *Biggs* court stated that the defendant's assertion of qualified immunity as a defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits.

81 F.App'x 432, 435 (4th Cir. 2003). Ultimately, "the underlying inquiry remains

13

whether the [p]laintiff's intention to hold a defendant personally liable can be ascertained fairly." *Biggs*, 66 F.3d at 61.

In this case, Skaggs does not state the capacity in which he sues Clark; however, the substantive nature of the complaint indicates that Skaggs seeks to hold Clark personally responsible for taking his shoe and for refusing to address and correct the physical difficulties Skaggs experienced as a result of his shoe being confiscated. Skaggs does not claim that Clark was acting in accordance with a governmental policy or custom. To the contrary, Skaggs alleges that Clark took the shoe for no apparent reason and then failed to comply with the facility's grievance procedure, which required Clark to respond to Skaggs's repeated requests for help. Moreover, Clark does not deny that some or all of the claims are directed against him in his personal capacity. He merely contends that the claims are not sufficiently plausible to withstand a motion to dismiss. Therefore, the undersigned finds that Skaggs's claims for money damages are asserted against Clark in his personal capacity.

As far as Clark's argument that Skaggs has failed to assert a viable claim, the undersigned disagrees. The Eighth Amendment to the United States Constitution requires the State to provide its prison inmates with basic medical care. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A prison official violates this constitutional guarantee when he responds to a prisoner's serious medical need with deliberate indifference. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Consequently, to state a cognizable Eighth Amendment claim, an inmate must satisfy two elements. First, the inmate must allege the existence of an objectively serious medical condition or need. *Estelle,* 429 U.S. at 105. A medical condition is considered sufficiently serious when it has been diagnosed by a physician as

14

mandating treatment, or is so obvious that even a lay person would understand that medical attention is necessary. *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). A serious medical need may also be evidenced by the presence of a medical condition that substantially affects the prisoner's daily activities or causes chronic and significant pain. *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir.1992); *see, also. Adams v. Southwest Virginia Regional Jail Authority*, 524 Fed.Appx. 899. 900-01 (4th Cir. 2013). Second, the inmate must allege acts or omissions that evidence defendant's deliberate indifference to the serious medical need. *Wilson v. Seiter,* 501 U.S. 294, 297–99, 111 S.Ct. 2321, 2323–2325, 115 L.Ed.2d 271 (1991). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835.

    Here, Skaggs alleges that he suffered an accident in 1983 that left him with a leg length discrepancy. For nearly thirty years, he was required to wear special shoes and a leg brace in order to ambulate. Despite the obvious nature of Skaggs's physical disability, Clark confiscated one of Skaggs's shoes without explanation and took no measures to replace it. Skaggs claims that Clark was well aware of the deleterious effects the removal of one specially fitted shoe had on Skaggs's hips and legs, on the durability of his remaining shoe and brace and, ultimately, on his ability to walk. However, Clark ignored Skaggs's repeated appeals for assistance. The undersigned finds that these allegations are sufficient to state a viable claim against Defendant Clark in his personal capacity. *See, e.g. Davis v. Davis,* No. 2:11-cv-3241 WBS CDK P, 2013 WL 2475617 (E.D.Cal. June 7, 2013); *Williams v. Hodge,* No. 13-cv-00216-JPG, 2013 WL 1331979 (S.D.Ill. Apr. 2, 2013); *Saenz v. Helder,* No. 10-5172, 2013 WL 526074, at *6 (W.D.Ark.

Jan. 18, 2013). Accordingly, dismissal of the claims against Clark in his personal capacity is premature.

## IV. Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the United States District Judge accept and adopt the findings herein and **RECOMMENDS** that:

1. The Motion to Dismiss on Behalf of Defendants, the Western Regional Jail, the West Virginia Regional Jail & Correctional Facility Authority, and the West Virginia Department of Corrections, (ECF No. 14), be **GRANTED;**

2. The Motion to Dismiss of Defendant Michael Clark, (ECF No. 16), be **GRANTED** to the extent that Plaintiff has asserted claims against Clark in his official capacity and be **DENIED** as to any claims asserted against Clark in his personal capacity;

3. Plaintiff's complaint be **DISMISSED, with prejudice,** against the Western Regional Jail, the West Virginia Regional Jail & Correctional Facility Authority, and the West Virginia Department of Corrections, but continue to pend against Defendant Michael Clark; and

4. The Western Regional Jail, the West Virginia Regional Jail & Correctional Facility Authority, and the West Virginia Department of Corrections be removed as defendants from the style of this civil action.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of

such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, Defendants, counsel of record, and any unrepresented party.

**FILED:** December 17, 2013.

Cheryl A. Eifert
United States Magistrate Judge