IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

SHELBY DEAN SKAGGS,

                    Plaintiff,

v.                                              CIVIL ACTION NO. 3:13-3293

MICHAEL CLARK, Administrator,

                    Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is a Motion for Summary Judgment by Defendant Michael Clark, a jail administrator ("Clark"), on inmate-Plaintiff Shelby Skaggs's ("Skaggs") Eighth Amendment claim that Clark was deliberately indifferent to his serious medical need by confiscating Skaggs's medically necessary shoe and not returning it for nine months. ECF No. 117. This action, brought pro se under 42 U.S.C. § 1983, was referred to a United States Magistrate Judge for proposed findings of fact and recommendation for disposition (PF&R), pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge recommended granting Clark's Motion for Summary Judgment. ECF No. 121. Skaggs timely objected to the PF&R. ECF No. 125. For the reasons below, the Court SUSTAINS Skaggs's objections, DECLINES to adopt the Magistrate Judge's PF&R, FINDS Skaggs raised a genuine issue of material fact for trial, and DENIES Clark's motion for summary judgment.

# I.    BACKGROUND

## A.  Plaintiff's Complaint and Defendant's Motion for Summary Judgment

Skaggs's Eighth Amendment claim arises from Defendant Michael Clark's confiscation of an orthopedic shoe Skaggs wore on his left foot. After the shoe confiscation, Skaggs was forced to use only his right orthopedic shoe and leg brace, which eventually wore-out as a result of the added strain. After his right shoe and leg brace wore-out, Skaggs was confined to a wheelchair so he could ambulate without pain. The facts viewed in a light most favorable to Skaggs are presented in more detail below.

Since 1984 Skaggs has had to wear a leg brace due to a mining accident that broke his leg and damaged his ankle. Pl.'s Resp. to Mot. to Dismiss, Ex. 1 at 1, ECF No 97–1 [hereinafter Ex. 1]. After the accident, one of Skaggs's legs is shorter than the other, a condition for which Skaggs requires special orthopedic shoes and a leg brace in order to walk evenly. *Id.*

In April 2012, Skaggs was admitted to the Western Regional Jail (the "Jail") near Barboursville, West Virginia. Upon his arrival at the Jail, Skaggs wore orthopedic shoes on each foot with a medical brace on his right leg. Affidavit of Michael Clark at 1, ECF No. 117–1.

On April 21, 2012, Clark, the Jail's administrator, ordered Correctional Officer Carver to confiscate Skaggs's left shoe for safety and security purposes, but for an unexplained reason, not Skaggs's right shoe or leg brace. Ex. 1 at 20; *see also* Affidavit of Michael Clark ¶ 4.[1] The next day, Clark consulted the medical unit, which was operated by PrimeCare medical, about the medical necessity of the shoes and metal brace. Affidavit of Michael Clark ¶ 5. The medical unit informed Clark that Skaggs should continue to wear the shoes and metal brace. *Id.* ¶ 5. The

---

[1] On April 22, 2012, a medical staff member wrote in the medical log, "[i]nmate came up to med cart, only has one boot. Officer Carver states, 'Per Mike Clark, I put it in his personal belongings.'" Ex. 1 at 20.

conversation was recorded by a medical staff member at the Jail who wrote in the Jail's medical log that, "[f]or security purposes, Administrator Mike Clark asked if inmate needed both medical boots. Per M.Bennett, Inmate is to have both boots d/t inmate has one leg shorter than the other." Ex. 1 at 20. Clark agreed with the medical assessment that Skaggs's left orthopedic shoe was medically necessary. But Clark maintains he was "under the impression and belief" that Skaggs continued to wear both shoes and the metal brace, Affidavit of Michael Clark ¶ 5, even though Clark had ordered the left shoe confiscated the day before he consulted the medical unit.

Around July 25, 2012, Skaggs reported to the Jail's medical unit with his brace malfunctioning, and a staff member instructed Skaggs to have his family return the brace for repair, as the staff member believed the brace was under warranty. Ex. 1 at 5, 8. A medical staff member also sent Skaggs a note informing him that the Jail was not responsible for replacing his broken right shoe. *Id.* at 8.[2] At the same time, the staff member recorded in the Jail's medical log that Skaggs required an orthopedic shoe on his left foot to correct his leg length discrepancy. *Id.* at 5.

Over the course of several months in late 2012, Skaggs submitted several grievances and sick call requests about his leg condition. On October 23, 2012, Skaggs submitted to Clark an inmate grievance stating he would like to have his left shoe returned to him because his back and knees were starting to hurt badly. Ex. 1 at 19, 18. The portion of the form titled "Response/Disposition" is blank, as is true with some of the other grievance forms submitted by Skaggs. *Id.* On November 21 and 22, 2012, Skaggs submitted a sick call request to PrimeCare Medical because his right shoe and brace needed to be repaired or replaced at that time. Ex. 1 at

---

[2] The note, signed by the medical department, reads in its entirety, "[w]e do not supply shoes[,] even though you['re] diabetic. You are responsible for them. They can be purchased off commissary."

12, 18. On December 12, 2012, Skaggs made another sick call request due to pain in his back and legs. Ex. 1 at 16.

On December 21, 2012, Skaggs sent a letter to the West Virginia Regional Jail and Correctional Facility Authority (the "Authority") explaining his need for medical services. Ex. 1 at 1. In his letter, Skaggs explained that an administrator at his facility confiscated his left shoe eight months before the date of the letter. *Id.* Skaggs explained further that he had asked and filed grievances to get his shoe back, to no avail. *Id.* At the time of the letter, Skaggs's brace and shoe were both becoming worn-out. *Id.* He explained to the Authority that he had asked the Jail to fix or replace the right shoe and brace; but the Jail Administrator had not responded, and the medical unit had informed him that because his condition existed prior to his being taken into custody at the Jail, Skaggs would need to wait until he got to prison to have these medical devices fixed or replaced. *Id.* Skaggs reported to the Authority that he had pain in his back and both legs because of having to walk without his left shoe. *Id.* To treat the pain caused by his walking without an orthopedic shoe on his left foot, the medical staff provided Tylenol and ibuprofen to Skaggs. *Id.* According to Skaggs, however, this was ineffective at alleviating his backache. *Id.* Skaggs also complained that he received a shoulder and arm injury from Correctional Officer Berlin slamming a steel door against him while he was in a wheelchair and entering the medical unit in December 2012. *Id.*[3] To treat his arm and shoulder injury, Skaggs had asked for an x-ray, but the Jail failed to provide one. *Id.* Skaggs reported losing strength in his arm and feeling "a good deal" of pain. *Id.* As a final plea for medical assistance from the Authority, Skaggs asked to have his shoe and brace fixed or replaced, to have his left shoe returned so he could be on even footing with the other

---

[3] Officer Berlin was previously dismissed from this action.

shoe and brace, to see an orthopedic doctor and have an x-ray for his arm and shoulder injury, and for medication to treat the pain he experienced. *Id.*

After Skaggs's letter to the Authority, medical staff at the Jail ordered an X-Ray on January 7, 2013. Ex. 1 at 4. However, the Jail did not return Skaggs's left shoe, nor did staff repair or replace Skaggs's right shoe or leg brace.

On January 2, 2013, Skaggs submitted another sick call request to PrimeCare Medical, stating that he needed to see a doctor about pain in his back, legs, and right shoulder. Ex. 1 at 21. Skaggs was evaluated by Jail medical staff on January 6, 2013. Def.'s Mot. for Summ. J. at 2, ECF No. 117; Exs. D, E, ECF Nos. 117–4, 117–5. During the visit, medical staff took away the right orthopedic shoe and leg brace because both were broken down. Skaggs was provided a wheelchair until the medical administrator could evaluate the right shoe and brace. The next day, Skaggs explained to medical staff that his family would not pay for the replacement.

On February 22, 2013, Skaggs brought suit pro se under 42 U.S.C. § 1983 against Clark and others now-dismissed from this action. Compl. 1, ECF No. 2. In his Amended Complaint filed almost a year later, Skaggs alleges Clark, along with other Jail officials, was deliberately indifferent to his serious medical need in violation of the Eighth Amendment by confiscating Skaggs's left orthopedic shoe for at least nine months, which caused Skaggs leg and back pain during the period before he was provided a wheelchair. ECF Nos. 2, 80.

On June 19, 2015, Clark filed a Motion for Summary Judgment. ECF No. 117. Skaggs filed a Response on July 6, 2015. ECF No. 119. In his response, Skaggs pointed to several documents he produced during discovery to factually support his Eighth Amendment Claim against Clark. One of those documents is the log of April 22, 2012 medical notes indicating Clark ordered the confiscation of Skaggs's left shoe, and Clark was later informed by medical staff the shoe was

medically necessary. Ex. 1 at 20. Another document Skaggs referenced is the October 23, 2012 inmate grievance form submitted to Clark and signed by Skaggs, which states, "I would like to get my shoe back because my back and knees are really starting to hurt bad [sic]." Ex. 1 at 19. Clark filed a Reply on July 13, 2015, ECF No. 120. Clark's Motion for Summary Judgment was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B).

### B. Magistrate Judge's Proposed Findings and Recommendations

The Magistrate Judge, after reviewing arguments and evidence presented by both Parties, proposed finding that "undisputed evidence of record fails to establish a genuine issue of material fact concerning the conduct of Clark that would sufficiently give rise to an Eighth Amendment Claim." PF&R 10, ECF No. 121. With regard to a serious medical need, the Magistrate Judge stated Skaggs "has not provided sufficient argument to overcome the presiding District Judge's prior legal finding that his condition does not rise to the level of a serious medical need."[4] *Id.* As for the deliberate indifference prong, the Magistrate Judge stated that Skaggs had failed to produce evidence Skaggs maintained would support finding deliberate indifference, namely a grievance

---

[4] In a previous order dismissing other individuals from the suit, the Court made a cursory statement suggesting without analysis that Plaintiff's leg condition did not rise to the level of a serious medical need for purposes of the Eighth Amendment. *Skaggs v. Clark*, No. 13-3293, 2015 WL 269154, at *5 (S.D.W. Va. Jan. 21, 2015), ECF No. 111. The Court, however, provided a different basis for granting Defendant Dr. Wong's motion for summary judgment, namely Skaggs's failure to produce evidence that Dr. Wong was deliberately indifferent. Instead of showing deliberate indifference, the evidence showed conclusively that Dr. Wong prescribed medication to ease Skaggs's pain and discomfort and ordered diagnostic testing. Because Skaggs failed to show Dr. Wong was deliberately indifferent, the Court concluded that Skaggs had no Eighth Amendment claim against Dr. Wong. Thus, the actual basis for granting summary judgment in Dr. Wong's favor was not the seriousness of Skaggs's medical condition, but rather the lack of deliberate indifference on Dr. Wong's part. The Court's statement about Skaggs's medical condition is mere dicta. In its previous order, the Court never analyzed whether, as a matter of law, Skaggs failed to present evidence of a serious medical need. As such, that issue is preserved for the present motion for summary judgment brought by Clark.

form dated October 23, 2012.[5] *Id.* As such, the Magistrate Judge recommended finding Skaggs failed to dispute an affidavit by Clark that he was unaware of Skaggs's orthopedic shoe deprivation until filing of this lawsuit. *Id.*; *see also* Affidavit of Michael Clark ¶ 7. On this basis, the Magistrate Judge concluded that Skaggs might be able to establish Clark was negligent in failing to ensure the shoe was returned to Skaggs, but that negligence is insufficient to establish an Eighth Amendment claim. *Id.* Additionally, the Magistrate Judge recommended finding Clark is entitled to qualified immunity, presumably on the basis that Skaggs failed to produce evidence showing an Eighth Amendment violation. *Id.* Accordingly, the Magistrate Judge recommended granting Clark's motion for summary judgment on Skaggs's Eighth Amendment claim. *Id.* at 10–11.

### C. Plaintiff's Objections

Skaggs timely objected to the findings and recommendations of the Magistrate Judge on February 9, 2016. ECF No. 125. In his Objections, Skaggs states the Magistrate Judge failed to consider evidence Skaggs produced in response to Clark's motion for summary judgment on Skaggs's Eighth Amendment claim. *Id.* at 2.

The facts Skaggs points to in support of finding a serious medical need include: (1) Skaggs's medical condition was treated by special orthopedic shoes and braces ordered by a physician at Orthoclinic, PC on July 23, 2010, ECF No. 125 at 8; and (2) once Skaggs's left shoe was confiscated by Clark on April 21, 2012, Skaggs experienced leg and back pain, and after his other orthopedic shoe and leg brace were taken on January 6, 2013, he required a wheelchair to ambulate, ECF No. 97–1 at 20; ECF Nos. 117–4, 117–5.

---

[5] The Court notes this statement by the Magistrate Judge is in error because the electronic docket sheet indicates that on June 3, 2014, before the Magistrate Judge issued his PF&R, Skaggs filed the October 23, 2012 grievance form supporting his deliberate indifference allegation. Ex. 1 at 19, ECF No. 97–1.

The facts Skaggs points to in support of finding Clark was deliberately indifferent include: (1) the April 22, 2012 medical notes stating "Inmate came up to med cart, only has one boot. Officer Carver states, 'Per Mike Clark, I put it in his personal belongings'" and "[f]or security purposes, Administrator Mike Clark asked if inmate needed both medical boots. Per M.Bennett, Inmate is to have both boots d/t inmate has one leg shorter than the other," Ex. 1 at 20; (2) the October 23, 2012 inmate grievance form Skaggs filed with Clark, in which Skaggs said "I would like to get my shoe back because my back and knees are really starting to hurt bad [sic], " Ex. 1 at 19; and (3) Clark agreed that Skaggs should continue to wear both shoes and the brace yet failed to ensure the left shoe was returned to Skaggs after Clark had it confiscated, and instead, Clark claimed he did not know the shoe was not returned to Skaggs until this lawsuit was filed on February 22, 2013. Obj. at 4.

Having summarized the facts taken in a light most favorable to Skaggs and the procedural posture of this case, the Court will next explain the legal standard, discuss the proposed findings and recommendation, and analyze Clark's motion for summary judgment.

## II.      Standard of Review and Legal Standard

This Court conducts a *de novo* review of those portions of the magistrate judge's proposed findings and recommendations to which a party objects. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."). The Court, however, is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

The nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23-2- (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III.    Discussion

For the reasons explained below, the Court grants Skaggs's Objections to the Magistrate Judge's PF&R and declines to adopt it, finds Skaggs raised triable issues of fact on his Eighth Amendment claim, and denies Clark's motion for summary judgment. Clark claims he is entitled to summary judgment in his favor because Skaggs has not shown an Eighth Amendment violation based on Clark being deliberately indifferent to a serious medical need of Skaggs, and because even if evidence shows an Eighth Amendment violation, Clark is nonetheless entitled to qualified immunity from suit. The Court considers the PF&R and Defendants two arguments in turn.

## A. Magistrate Judge's PF&R

Despite the Magistrate Judge's hard work on this drawn-out proceeding, declining to adopt the PF&R is appropriate here for at least three reasons. First, the Magistrate Judge applied the incorrect standard on a motion for summary judgment, proposing findings based on the "undisputed evidence," rather than evidence viewed in a light most favorable to the non-moving party, Skaggs. PF&R at 10 ("Based upon the *undisputed evidence of record*, at most, the plaintiff might be able to establish that defendant Clark was negligent in failing to ensure that the plaintiff's left shoe was returned to him. Negligence is insufficient to establish an Eighth Amendment claim.") (emphasis supplied); *id.* (proposing "the presiding District Judge find that the *undisputed evidence of record* fails to establish a genuine issue of material fact concerning the conduct of defendant Clark that would sufficiently give rise to an Eighth Amendment claim) (emphasis supplied). In this case, there are several disputed facts that are material to Skaggs's Eighth Amendment claims, such as the dispute over when Clark became aware that Skaggs was without his left orthopedic shoe. Skaggs contends and supports with evidence an inference that Clark knew as of April 21, 2012 that he had deprived Skaggs of his left shoe and that Clark was reminded of this at least once by inmate grievance filed in October 2012. Clark, on the other hand, maintains he was unaware of the shoe deprivation until the commencement of this action on February 22, 2013. From the Magistrate Judge's PF&R recommending a finding based on the "undisputed evidence of record," it is unclear that the Magistrate Judge made his recommendation based on viewing the evidence in a light most favorable to Skaggs.

Second, the Magistrate Judge failed to analyze whether Skaggs's condition requiring orthopedic shoes to walk without pain presented a serious medical need. Instead, the Magistrate Judge relied upon dicta in a previous ruling by the presiding judge. *See* n.4 *supra* and

accompanying text. Because the deliberate indifference question is closer as to Clark than it was for Dr. Wong, the serious medical need question requires more detailed analysis.

Lastly, the Magistrate Judge seems to have overlooked evidence Skaggs produced to the Court prior to the Magistrate Judge's PF&R, and which supported a finding of deliberate indifference.[6] *Compare* PF&R at 10 ("The plaintiff has not produced the October 23, 2012 grievance which he maintains will support a finding of deliberate indifference by defendant Clark, or any other competent evidence to dispute Clark's Affidavit."), *with* Ex. 1 at 19 (October 23, 2012 grievance filed by Skaggs prior to PF&R being issued).

Together, these errors on the Magistrate Judge's part, although understandable given the lengthy record compiled in this case, require a closer inquiry by this Court into Skaggs's Eighth Amendment Claim and Clark's qualified immunity defense. For the reasons explained above, the Court grants Skaggs's objections to the Magistrate Judge's PF&R and declines to adopt the findings and recommendations made in the PF&R.

**B.  Eighth Amendment Claim for Deliberate Indifference to Serious Medical Need**

The United States Constitution's Eighth Amendment Cruel and Unusual Punishment Clause, incorporated to the States through the Fourteenth Amendment Due Process Clause, imposes certain duties on prison and jail officials, including requiring them to ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). To state a cognizable claim for denial of medical care under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate deliberate indifference to a

---

[6] Skaggs complains that the Magistrate Judge's "disavow[ing] the existence and receipt of Skaggs's grievance," evidences a "note of bias." Obj. at 5, ECF No. 125. Skaggs presents no other evidence or arguments that the Magistrate Judge was biased in anyway. For that reason, the Court finds the Magistrate Judge's failure to consider the grievance is the sort of mistake made as a result of reasonable inadvertence amidst a heavy caseload, and not any indication that the Magistrate Judge was biased against Skaggs.

serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Jail officials violate the Eighth Amendment by failing to meet inmates' serious medical needs only when two requirements are met: First, objectively the deprivation must be sufficiently serious, *i.e.,* there must be a medical need that is serious; second, subjectively the jail official must have a sufficiently culpable mental state, *i.e.,* deliberate indifference. *Farmer*, 511 U.S. 825 at 834; *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also Samples v. Lewis*, No. 13-657, 2014 WL 66573, at *5-6 (D.S.C. Jan. 8, 2014). Here, Skaggs claims a jail official, Clark, was deliberately indifferent to his serious medical need by confiscating his medically necessary shoe for at least nine months.

### 1. Serious Medical Need

As an initial matter, Clark mistakenly points to a previous order of this Court that suggests, in passing, that Skaggs's leg condition does not rise to the level of a serious medical need for purposes of an Eighth Amendment claim. Although the Court's order dismissing other individuals from the suit made a cursory statement suggesting such without any analysis, the Court did not purport that lack of a serious medical need was the basis of its dismissal; instead, the Court analyzed the lack of deliberate indifference on the part of the now-dismissed defendant. *Skaggs*, 2015 WL 269154, at *5. In other words, Clark relies on dicta. In its previous order, the Court never analyzed whether, as a matter of law, Skaggs's condition failed to present a serious medical need. *See id.* As such, that issue is preserved for the present motion for summary judgment.

Under the objective prong of an Eighth Amendment ineffective medical assistance claim, the plaintiff must produce evidence that his or her medical need was "serious." In *Estelle*, the Supreme Court recognized that medical needs constitutionally requiring treatment by prison officials ranged from the "worst cases," producing "physical torture or a lingering death," to "less

serious cases," resulting from the "denial of medical care," which could cause "pain and suffering." *Estelle*, 429 U.S. at 103.[7] Given the fact-specific nature of Eighth Amendment denial of medical care claims, it is difficult to formulate a precise standard of "seriousness" capturing those medical conditions within the realm of Eighth Amendment concern and excluding those conditions that are not. *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003) (citation omitted). However, courts interpreting *Estelle* have recognized that "[m]edical needs of inmates need not be considered 'life threatening' to be considered serious." *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir.1988). The Fourth Circuit and most others agree that a condition presents a serious medical need if it has been "diagnosed by a physician as mandating treatment" or is "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008); *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996); *Sheldon v. Pezley*, 49 F.3d 1312, 1316 (8th Cir. 1995); *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994); *Gaudreault v. Mun. of Salem*, Mass., 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991);

---

[7] Specifically, the Court, per Justice Marshall, held and reasoned:

> [T]he government[ has an] obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death . . . ." In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that "(i)t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself."

*Estelle*, 429 U.S. at 103–04.

*Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). A condition may also be serious when delay or denial of treatment causes "unnecessary and wanton infliction of pain" or life-long disability. *Lanzaro*, 834 F.2d at 347 (quoting *Estelle*, 429 U.S. at 103). In considering a motion for summary judgment, one federal district court sitting in West Virginia has held that a medical need may be serious because it requires treatment, causes chronic pain, and affects the prisoner's daily activities. *Finley v. Trent*, 955 F.Supp. 642, 646 (N.D.W. Va. 1997).

Furthermore, "several courts have recognized that a medical condition which threatens a plaintiff's ability to walk, even on a non-permanent basis, [constitutes] a serious medical need." *Taylor v. Plousis*, 101 F. Supp. 2d 255, 262 (D.N.J. 2000) (citing *Kaufman v. Carter*, 952 F.Supp. 520, 527 (W.D. Mich. 1996) ("A medical condition that threatens one's ability to walk, even if ultimately reversible, is unquestionably a serious matter."); *Johnson v. Hardin Cty.*, 908 F.2d 1280, 1283–84 (6th Cir. 1990) (holding that defendant's refusal to provide inmate with crutches supported claim of deliberate indifference)); *see also Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995) ("We do not doubt that the failure to provide a wheelchair for an inmate may constitute deliberate indifference to a serious medical need in some circumstances"); *LaFaut v. Smith*, 834 F.2d 389, 393-94 (4th Cir. 1987) (holding Eighth Amendment violated when prison delayed for eight months providing for basic needs of paraplegic prisoner, including ambulatory therapy); *Parzyck v. Prison Health Servs., Inc.*, 290 F. App'x 289, 291 (11th Cir. 2008) (finding serious medical need where foot condition caused extreme pain that prevented prisoner from walking normally); *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir.1990) (painful broken foot constituted serious medical need); *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989) (holding injured leg that made it painful and virtually impossible to walk constituted serious medical need); *Reynolds v. Barnes*, 84 F. App'x 672, 674 (7th Cir. 2003) ("broken foot constitutes an objectively serious

medical condition"); *Petties v. Carter*, 795 F.3d 688, 693 (7th Cir. 2015), *reh'g en banc granted*, opinion vacated (Oct. 15, 2015) (Williams, J dissenting to panel decision) ("no dispute that [prisoner's] Achilles tendon rupture was objectively serious."); *Smith v. Goss*, No. 10-01814, 2015 WL 1249871, at *3 (E.D. Cal. Mar. 18, 2015) *R. & R. adopted sub nom., Smith v. Allison*, No. 10-01814, 2015 WL 3466529 (E.D. Cal. June 1, 2015) (serious medical need pled where plaintiff had foot condition making it painful to walk without orthopedic shoes); *Gonzalez v. Bopari*, No. 12-1053, 2014 WL 6925750, at *3 (E.D. Cal. Dec. 9, 2014) (finding serious medical need pled where plaintiff was amputee whose ill-fitting prosthetic caused him to fall and prevented him from walking more than five feet); *Miller v. Rao*, No. 08-2469, 2013 WL 6240672, at *6 (W.D.N.Y. Dec. 3, 2013) (plaintiff's medical need for orthotics correction due to pain in hip and knee, aggravated by denial of previously-prescribed orthotic footwear, was serious medical need); *Giambalvo v. Sommer*, 2012 WL 4471532, at *5 (S.D.N.Y. Sep. 19, 2012) (finding prisoner's medical condition was serious because he required medical shoes to walk); *Mahoney v. Schweitzer*, 2010 WL 1707734, *1 (D. Mont. Jan. 26, 2012) (noting "knee injury affecting [p]laintiff's ability to walk may be a serious need," but dismissing complaint on deliberate indifference grounds); *Harris v. Hershey Med. Ctr.*, No. 08-843, 2009 WL 2762732, at *5 (M.D. Pa. Aug. 27, 2009) (finding serious medical need where chronic leg and back pain, for which plaintiff had been previously prescribed therapy and medication, caused plaintiff to walk with a cane); *Duarte v. Wong*, No. 05-01374, 2007 WL 2782940, at *4 (N.D. Cal. Sept. 24, 2007) (finding triable issue on whether fractured foot constituted serious medical need where physician ordered special shoe and prescribed pain medication, and where pain prevented plaintiff from bearing full weight on foot and significantly affected ability to walk); *Ruffin v. Deperio*, 97 F. Supp. 2d 346, 352 (W.D.N.Y. 2000) (finding serious medical need when diabetic plaintiff's foot injury caused

difficulty walking and severe constant pain); *but see Haverty v. Crosby*, No. 05-00133, 2006 WL 839157, at *5 (N.D. Fla. Mar. 28, 2006) (3/4-inch disparity in length of plaintiff's legs is not serious medical need).

For at least two reasons, Skaggs has presented evidence that his condition, requiring a special orthopedic shoe to walk normally and without pain, amounted to a serious medical need. First, Skaggs produced an orthopedic clinic's letter dated July 23, 2010 which recommended that Skaggs wear an ankle/foot orthotic to treat his condition. Thus, under the standard employed by the Fourth Circuit and most others, Skaggs's medical need was serious because his condition was diagnosed by a doctor as needing treatment. *See Iko*, 535 F.3d at 241; *Gutierrez*, 111 F.3d at 1373; *Riddle*, 83 F.3d at 1202; *Sheldon*, 49 F.3d at 1316; *Hill*, 40 F.3d at 1186; *Gaudreault*, 923 F.2d at 208; *Lanzaro*, 834 F.2d at 347.

Second and more fundamentally, Skaggs's leg condition constitutes a serious medical need because it affected his ability to walk normally and without pain. Skaggs's leg condition, untreated by an orthopedic shoe on his left foot, caused him such daily leg and back pain that he was unable to walk normally. Walking without his left shoe caused his right shoe and leg brace to become worn-out. Ultimately, he was confined to a wheelchair because he experienced leg and back pain when walking without the aid of his orthopedic shoes and leg brace. Because Skaggs experienced pain walking without his left orthopedic shoe and ultimately required use of a wheelchair when both of his shoes were unavailable to him, his medical need was serious for purposes of the Eighth Amendment. *See Taylor*, 101 F. Supp. 2d at 262; *Ruffin*, 97 F. Supp. 2d at 352; *Giambalvo*, 2012 WL 4471532 at *5; *Goss*, 2015 WL 1249871, at *3, *Gonzalez*, 2014 WL 6925750, at *3; *Rao*, 2013 WL 6240672, at *6; *Harris*, 2009 WL 2762732, at *5; *Duarte*, 2007 WL 2782940, at *4; *see also LaFaut*, 834 F.2d at 393-94; *Parzyck*, 290 F. App'x at 291; *Mandel*, 888 F.2d at 788.

-16-

Support for this conclusion is found in *Giambalvo v. Sommer*, where a federal district court in New York considered a set of facts quite similar Skaggs's case and found the medical condition was serious because the prisoner required medical shoes to walk. 2012 WL 4471532 at *5 (S.D.N.Y. Sep. 19, 2012). In *Giambalvo*, the plaintiff suffered severe and degenerative foot pain and had difficulty walking without medical shoes. *Id.* A podiatry specialist recommended plaintiff use medical shoes as a part of treatment for his foot pain. *Id.* The prisoner was denied medical shoes by the prison, and as a result, he suffered with each step and sustained injuries, resulting in a slip and fall accident and in his confinement to a wheelchair. *Id.* The district court held the plaintiff presented a serious medical need because "[m]obility is fundamental to our continued health, and the denial of reasonable care that could prevent the loss of the ability to circumambulate is indeed serious." *Id.* In this case, Skaggs, due to his leg length discrepancy caused by a mining accident, has difficulty walking without his medically prescribed orthopedic shoes, which help him walk evenly and without pain. *See* Ex. 1 at 1, 5, 16, 18–20. When he was denied his left orthopedic shoe, Skaggs experienced leg and back pain, prematurely wore-out his orthopedic right shoe and leg brace, and eventually was confined to a wheelchair. The Court finds Skaggs's medical condition requiring orthopedic shoes in order to walk evenly and without pain is similar to the *Giambalvo* plaintiff's need for medical shoes, and therefore, *Giambalvo* lends further support for finding that Skaggs's medical condition is serious for purposes of the Eighth Amendment.

Construing the facts in a light most favorable to Skaggs, the Court cannot agree with the Magistrate Judge that Skaggs has failed to show he suffered a serious medical need. Skaggs presented evidence that his condition was diagnosed by a physician as requiring treatment, that his condition, when untreated, caused unnecessary infliction of pain, and that his condition threatened his ability to walk. As explained above, courts have held that any one of these three circumstances

makes a condition sufficiently serious for purposes of the Eighth Amendment. As such, Clark's motion for summary judgment is not warranted on the serious medical need prong.

### 2. *Deliberate Indifference*

Clark next argues Skaggs has failed to produce evidence showing Clark was deliberately indifferent.

To satisfy the subjective prong of an Eighth Amendment ineffective medical assistance claim, the plaintiff must produce evidence that jail staff exhibited "deliberate indifference." In *Farmer v. Brennan*, the Supreme Court defined the term deliberate indifference. 511 U.S. 825, 832 (1994). Under the Eighth Amendment, acting with deliberate indifference to an inmate's serious medical need means subjectively recklessly disregarding that need, in other words knowing of an inmate's serious medical need and disregarding that need by either taking certain actions or failing to take reasonable measures to meet the need. *See Farmer*, 511 U.S. at 836, 842. Deliberate indifference is more than mere negligence but less than acting for the purpose of causing harm or with knowledge that harm will result. *Farmer*, 511 U.S. at 835–36. Under the deliberate indifference subjective recklessness standard, jail officials violate the Eighth Amendment by failing to meet an inmate's serious medical need only if the official (1) was aware of facts supporting an inference that a medical need exists, and (2) the official drew the inference. *Id.* at 837. An official's failure to alleviate a serious medical need that the official *should have* perceived but *did not* cannot violate the Eighth Amendment. *Id.* at 838 (emphasis supplied).

The Eighth Amendment deliberate indifference standard is consistent with the concept of constructive knowledge, and a jail official may be charged with constructive knowledge of a serious medical need if the official's awareness can be presumed from the need's obviousness. *Id.* at 840. Whether the jail official had the requisite knowledge of a serious medical need is a fact

-18-

question subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a jail official knew of a serious medical need from the very fact that the risk was obvious. *See id.* at 842 (citations omitted) (explaining difference between requisite mental state and proof of its existence). For example, where evidence shows a defendant-official being sued was exposed to information about the serious medical need, and thus must have known about it, then such evidence is sufficient to permit a trier of fact to find the defendant-official had actual knowledge of the medical need. *See id.* at 842–43.

Construing the facts and inferences in a light most favorable to Skaggs, a reasonable juror could conclude Clark was deliberately indifferent. In his defense that he was not deliberately indifferent, Clark states he first became aware Skaggs was without his left orthopedic shoe when Skaggs filed the instant lawsuit. Affidavit of Michael Clark ¶ 7. However, the medical note dated April 22, 2012 and the October 2012 inmate grievance, taken in a light most favorable to Skaggs, contradict Clark's alleged ignorance, and they demonstrate that not only was Clark aware of Skaggs's orthopedic shoe deprivation for over nine months, but he was reminded of the deprivation at least once in the middle of that time period. Ex. 1 at 19, 20.[8] In the context of jails, the administrator giveth, and the administrator taketh. If Clark ordered the left orthopedic shoe confiscated to investigate it as a security threat, then Clark—after learning the shoe was medically necessary and posed no security threat—would have needed to order the shoe returned in order for Skaggs's medical needs to be met. A reasonable juror can infer from the circumstances that Clark actually knew the shoe would remain confiscated until he ordered it returned. Clark, however, failed to order return of the confiscated left orthopedic shoe—nor did he provide Skaggs an

---

[8] The April 22, 2012 medical note states the left shoe was confiscated on Clark's order. Ex. 1 at 20. And in the October 23, 2012 grievance to Clark, Skaggs stated he would like to get his left shoe back because his back and knees were starting to hurt badly. Ex. 1 at 19.

-19-

alternative remedy such as a wheelchair—which in turn unnecessarily deprived Skaggs of his medically required shoe for over nine months. If a jail official confiscates a device from an inmate and later becomes aware the device is medically necessary to the inmate, then the official is aware the inmate has an unmet serious medical need while the device remains confiscated.[9] *See Nunn v. Keller*, No. 10-3211, 2014 WL 1267043, at *10 (E.D.N.C. Mar. 26, 2014) (no deliberate indifference shown, despite one-month delay in providing medical boots previously confiscated, where staff was confused about who would provide boots and no evidence indicated deliberate misconduct by staff). Furthermore, Clark must have actually known that his response—failing to return the orthopedic shoe, despite Skaggs's October 2012 reminder and plea—was inadequate to address Skaggs's medical needs. *Iko*, 535 F.3d at 242. As an inmate, Skaggs had no recourse to retrieve his medically necessary shoe, other than to request it back from Clark and grieve to him, which Skaggs did to no avail. Although there is no evidence that Clark knew Skaggs was ultimately confined to a wheelchair due to the deprivation, the record construed in a light most favorable to Skaggs permits a factfinder to conclude that Clark was deliberately indifferent because he was aware for a period of nine months that Skaggs remained deprived of his medically necessary left orthopedic shoe, and he knew for several months that this deprivation caused Skaggs pain. *See Iko*, 535 F.3d at 243 ("Because [plaintiff's] needs were objectively serious and the officers were subjectively aware of that seriousness and chose to do nothing, the officers' actions . . . violated [plaintiff's] Eighth Amendment right to adequate medical care").

---

[9] Perhaps Clark was aware that Skaggs's shoe was medically necessary but forgot that he had ordered Skaggs's shoe confiscated. Not only is such an inference not favorable to Skaggs, and thus inappropriate for the Court to draw in resolving a motion for summary judgment, but also, *Farmer*'s deliberate indifference subjective recklessness standard does not contemplate a prison or jail official's forgetfulness as an escape from Eighth Amendment liability. A jail official's forgetting that he or she deprived an inmate of necessary medical treatment is not a pathway to unawareness for purposes of *Farmer*.

Additionally, the deliberate indifference displayed by Clark differs from the deliberate indifference alleged but not found in *Johnson v. Quinones* and *Wester v. Jones*, two cases the Magistrate Judge relied upon in his PF&R. PF&R 6–7. In *Johnson*, the Fourth Circuit found no Eighth Amendment liability because although the prisoner presented evidence that prison doctors had general knowledge of the prisoner's symptoms and of the risk for a tumor, the prisoner failed to put forth evidence that the doctors drew an inference from the symptoms that the prisoner had the tumor from which he suffered. *Johnson v. Quinones*, 145 F.3d 164, 169 (4th Cir. 1998). The Fourth circuit reached a similar conclusion in *Wester*, finding only medical negligence and therefore no Eighth Amendment violation. *Wester v. Jones*, 554 F.2d 1285, 1286 (4th Cir. 1977). Here, a reasonable factfinder could conclude that Clark acted with deliberate indifference, first by finding that Clark was aware of Skaggs's serious medical need because Clark was informed of such by the medical unit, and second by finding that Clark consciously disregarded that need because Clark failed to take any action to reverse his previous order confiscating Skaggs's left orthopedic shoe. That Skaggs grieved directly to Clark in October 2012 about his still-confiscated shoe is further evidence of Clark's deliberate indifference. Clark did not even need to draw an inference that Skaggs remained deprived of his shoe; such would be obvious to Clark under circumstances where he was the one who ordered the shoe confiscated in April and was reminded by Skaggs in October that the shoe remained confiscated.

Viewing the evidence in a light most favorable to the non-moving party, the Court holds Skaggs has presented evidence to support his Eighth Amendment claim that Clark was deliberately indifferent to Skaggs's serious medical need. Confiscating a medically necessary shoe and failing to ensure it is returned, followed by failing for months to provide an alternative medical remedy—such as a wheelchair, constitutes the sort of deliberate indifference to an inmate's serious medical

needs the Eighth Amendment proscribes. As the Supreme Court noted in *Estelle*, "[i]t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." *Estelle*, 429 U.S. at 103–04. Because Skaggs has produced evidence that Clark violated his Eighth Amendment right to medical assistance, Clark's motion for summary judgment is not warranted on this ground.

### C. Qualified Immunity Defense

Lastly, Clark argues that even if Skaggs has adduced evidence to support an Eighth Amendment claim, Clark is nonetheless entitled to qualified immunity.

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability," as such, "it is effectively lost if a case is erroneously permitted to go to trial"; and so, the qualified immunity question should be resolved at the "earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001). In *Saucier*, the Supreme Court set forth a two-step analysis for resolving qualified immunity claims: First, a court must decide whether the facts that a plaintiff has alleged[10] or shown,[11] taken in a light most favorable to the plaintiff, make out a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier*, 533 U.S. at 201). Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established"

---

[10] If immunity is raised on motion to dismiss, courts apply the reviewing standards for deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Pearson*, 555 U.S. at 232.

[11] If immunity is raised on motion for summary judgment, courts apply the reviewing standards for deciding a motion for summary judgment under Federal Rules of Civil Procedure 50 and 56. *Pearson*, 555 U.S. at 232.

at the time of the defendant's alleged misconduct. *Id.* (citing *Saucier*, 533 U.S. at 201). While the sequence *Saucier* set forth is often appropriate, it is not mandatory; judges have discretion in deciding which of the two prongs should be addressed first, in light of the circumstances in the particular case at hand. *Id.* at 236. As a final matter, "[q]ualified immunity is intended to protect those officers who reasonably believe that their actions do not violate federal law, but it should not function to give officers one free violation of constitutional rights every time they are asked to apply a well-established principle to a new set of facts." *Trulock v. Freeh*, 275 F.3d 391, 412 (4th Cir. 2001) (Michael, J. concurring and dissenting) (internal quotations and citations omitted).

Applying the first *Saucier* prong, the evidence taken in a light most favorable to Skaggs shows jail officials violated his Eighth Amendment rights. As discussed above, jail officials violate inmates' Eighth Amendment rights by displaying deliberate indifference to inmates' serious medical needs, *Estelle*, 429 U.S. at 104, and Skaggs has produced evidence that Clark, a jail administrator, was deliberately indifferent to inmate Skaggs's orthopedic shoe deprivation, a serious medical need. Therefore, the question becomes whether the right was clearly established in the context of this case.

Under this set of circumstances, a reasonable jail official would have known that depriving Skaggs of his medically necessary shoe violated the Eighth Amendment's prohibition on cruel and unusual punishment. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 33 U.S. at 202. About April 21, 2012, Clark ordered Skaggs's left orthopedic shoe confiscated to investigate it as a security threat. The next day Clark learned the shoe was medically necessary and posed no threat, and he agreed that Skaggs should continue to wear the shoe, Affidavit of Michael Clark ¶ 5, but Clark failed to return the shoe. In October 2012, Skaggs reminded Clark

that the shoe remained confiscated because Clark had never ordered it returned.[12] Furthermore, Skaggs, in his October 2012 grievance reminding Clark about the shoe, reported bad pain in his back and legs due to the shoe deprivation. Clark seemingly ignored this grievance by providing no response to it. There is no evidence Clark was aware that Skaggs was ultimately confined to a wheelchair as a result of the deprivation. However, in total Clark confiscated a medical device under the auspice of investigating its security threat, learned it was medically necessary and posed no threat, agreed the inmate should have the device, failed to ensure it was returned, was reminded that the device remained confiscated and was told the deprivation caused the inmate unnecessary pain, and yet he ignored the reminder. A reasonable jail official would understand he or she violated an inmate's rights by learning confiscation of an inmate's medical device was both medically unwarranted and harmful to the inmate and then failing to return the device in a reasonable amount of time despite the inmates' direct plea to the official. *See Iko*, 535 F.3d at 243 n.12 (recognizing the right to adequate medical care had already been carefully circumscribed in the case law and so officers had "fair warning" that their conduct was unconstitutional, and therefore qualified immunity was unavailable to them). Prison and jail officials are aware that inmates rely on them to meet their medical needs. *See Estelle*, 429 U.S. at 103–04. Accordingly, the Court finds a reasonable jail official would have understood that he or she violated Skaggs's rights by confiscating his left orthopedic shoe for security investigation, learning it posed no

---

[12] Clark maintains that he believed Skaggs continued to wear the left orthopedic shoe, and that he first became aware Skaggs was without the shoe when Skaggs filed this lawsuit. Affidavit of Michael Clark ¶ 5. However, in discussing deliberate indifference under Part III.B.2 of this Memorandum Opinion and Order, the Court explains that on this motion for summary Skaggs's version of the facts must be credited, as he is the non-moving party. Under Skaggs's version, Clark was aware that he had confiscated the shoe, and the reasonable inference to draw from Clark's confiscation is that he knew the shoe would remain confiscated until he ordered its return, which he failed to do.

security threat and was medically necessary, and failing to return the orthopedic shoe despite Skaggs's reminder and plea for its return.

Viewing the evidence in a light most favorable to Skaggs, the Court holds Clark is not entitled to qualified immunity on Skaggs's Eighth Amendment Claim. Therefore, Clark's motion for summary judgment is not warranted on this ground.

### IV.    CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** Skaggs's objections and **DECLINES** to accept and incorporate the Proposed Findings and Recommendations of the Magistrate Judge. Because Skaggs has raised a genuine issue of material fact on his Eighth Amendment claim, and Clark is not entitled to qualified immunity, the Court **DENIES** Defendant Clark's Motion for Summary Judgment.

The Court **DIRECTS** the Clerk to forward copies of this Memorandum Opinion and Order to Magistrate Judge Tinsely, all counsel of record, and any unrepresented parties.

ENTER:        March 31, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE